## Roy C. Whayne Supply Company v. McGowan.

(Decided February 16, 1926.)

Appeal from Jefferson Circuit Court
(Chancery Branch, Second Division).

1. Partnership—"Partnership" is Result of Intention on Part of Parties—Conduct May Create Estoppel to Deny Partnership Relation.—A partnership is a result of intention on part of parties,

and partnership contract cannot arise in absence of intention, though conduct of persons who are not in fact partners sometimes estops them to deny existence of the relation.

2.    Partnership—Agreement to Furnish Money for Contractor for Part of Profits, Without Suffering Any Part of Losses, Held Not Partnership.—Agreement to furnish capital for road contractor, who was to furnish all equipment, and for certain divisions of profits, held a loan and not partnership; particularly since contractor was to suffer all of losses if there were any, and was to have exclusive management and control of business.

WILLIAM F. CLARKE, JR., for appellants.

ROBERT F. VAUGHN for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

Appellants, Roy C. Whayne and Harry T. Whayne, doing business under the name and style of Roy C. Whayne Supply Company, a partnership, instituted this action in the Jefferson circuit court against appellee, McGowan, to recover judgment for something more than $2,000.00 on the hypothesis that McGowan was the partner of one L. P. Kreiger, a highway contractor to whom appellants had sold supplies and from whom they had been unable to collect owing to the fact that he had become insolvent and had been adjudged a bankrupt.    In support of appellant's contention that appellee, McGowan, was a partner of Kreiger they pleaded and relied upon a written contract of date June 20, 1921, entered into between Kreiger and appellee, McGowan, which reads:

"This agreement is to witness that whereas L. P. Kreiger, of Louisville, Ky., has entered into a contract with Ruddell Construction Co. to do and perform certain work in connection with state project No. 10, section A, being the construction of about 5 7/10 miles of road in Muhlenberg county, Ky., and in order to do said work, it is necessary to employ about 12 to $15,000.00 of capital, said capital to be furnished by G. McGowan of Louisville, Ky. Said Kreiger is to furnish all necessary trucks and equipments to do the work, purchase rock and rock asphalt, employ labor and generally supervise the work to the best of his ability.    All bills for labor, material, etc., to be examined and approved by him and sent to said McGowan for payment out of the

capital furnished, all payments on account of work done to be sent to said McGowan, same to be accounted for by him and used in the payment of bills for labor and material until completion of the work, at which time he is to render an account of receipts and disbursements, and after deducting the amount of capital furnished by him, the net profit to be equally divided between said Kreiger and McGowan.

"It is further agreed that in the performance of the work it is contemplated that said Kreiger is to use and employ certain trucks and equipment now owned by him, and in the estimates of costs of labor, material, &c., there is included about $6,000.00 profit to said Kreiger on hauling on the use of his equipment, and in the event that there is a loss in the performance of this work said Kreiger agrees that before receiving the estimated $6,000.00, being his profit on hauling, said McGowan shall be entitled to receive the full amount of capital furnished by him, after which said Kreiger shall receive whatever portion of said hauling costs shall remain unpaid, but not exceeding the amount on hand, returning to said McGowan the money supplied by him.

"Said Kreiger agrees to use diligence in the performance of the work and to push the same to completion at the earliest practical date.

"Louisville, Ky.,                    L. P. KREIGER."
June 20/21.

Appellants say that the foregoing writing is conclusive evidence of the existence of a partnership between Kreiger and McGowan, and further that McGowan has so conducted himself by allowing himself to be held out and considered a partner with Kreiger as to be estopped from denying the existence of the partnership between them. Appellee, McGowan, asserts that he did not hold himself out as a partner with Kreiger and that appellants produced no evidence at the trial indicating he had permitted himself to be held out or held himself out as a partner of Kreiger. He further asserts that a participation in the profits of a venture does not necessarily prove that the one so participating is a partner in the business, especially where no partnership was intended by the parties, and, further says that where profits are shared not as profits but as compensation for the use of money or for services, no partnership is created for none

was intended by the parties; that the fundamental rule to be observed in determining the existence of a partnership is that regard must be paid to the true contract and intention of the parties as appears from all the facts of the case, and cites and relies upon the following cases: Stone v. Turfman's Supply Co., 103 Ky. 325; Roberts v. Adams & Son Co., 33 K. L. R. 207; Hart v. Kelly, 83 Pa. St. 286; Meehan v. Valentine, 145 U. S. 611; Thillman v. Benton, 82 Md. 64; 33 Atl. 485; Boston Smelting Co. v. Smith, R. I. 27, page 34; Cadenasso v. Antonelle (Cal.), 59 Pac. 765; Richardson v. Hughitt, 74 N. Y. 55.

Quite a lot of evidence was taken by the parties in support of their several contentions. The witnesses were asked to and did file copies of correspondence between the parties, and a number of other exhibits throwing light upon the relations existing between appellants and Kreiger. The chancellor found there was no evidence that appellee, McGowan, had held himself out as a partner of Kreiger or allowed or permitted Kreiger or other persons to so hold him out. After carefully considering the phraseology of the written contract quoted above, the chancellor reached the conclusion that the terms of that instrument did not indicate an intention on the part of the parties thereto to enter into a partnership arrangement and did not, in fact, constitute appellee, McGowan, a partner of Kreiger. It is from that judgment that this appeal is prosecuted.

In reaching the conclusion above stated the learned chancellor, Lafon Allen, reviewed many Kentucky cases upon the subject and some foreign cases and in doing so observed:

"Nothing in the law is more confused and unsatisfactory than the definitions of partnership found in the books and the texts suggested for determining whether or not a partnership exists. It was formerly the law in England (before the decision in Cox v. Hickman, 8 H. L. C. 268) and in some of the United States that a sharing of profits made a partnership, at least as to creditors. But this is no longer the law in either country and it is established that a person may contract for a share of profits as compensation for the advance of money without making himself a partner. It is so in Kentucky. Donley v. Hall and Long, 5 Bush 549; Fuqua and Smith v. Massie and Sons, 95 Ky. 387; Stone v. Turf-

man's Supply Co., 103 Ky. 318; Boreing v. Wilson, 128 Ky. 570; Roberts v. Adams & Sons Co., 33 K. L. R. 207, 110 S. W. 314; Studebaker Corporation v. Dobbs & Runge, 161 Ky. 542.

"Various tests have been proposed and approved, subsequently qualified or rejected altogether. The profit sharing test was once justified on the ground that there is thus taken from creditors a part of their security, but this reasoning is now cast aside. Of course, profit-sharing is an invariable feature of partnership and its absence negatives partnership; but its presence does not necessarily prove it. Sharing losses as well as profits was once thought to show partnership, but is no longer reputed infallible, since one may be a partner without it. It is frequently said that a profit-sharer is a partner when he participates 'as principal;' that is, when he and his associate are principal and agent, each for the other. But it is objected that this is begging the question; that agency is a result, not a cause, of partnership; that the test is a mere repetition of the question for the solution whereof a test is sought. At one time the 'net profit rule' (now rejected) was in vogue, by which a sharing of net profits was thought to indicate partnership, while sharing gross profits did not.

"A test which was once in fashion, but is so no longer, was that there was partnership if the profits were charged 'as profits;' but this has proved too metaphysical for practical purposes. It has been suggested that an interest 'as owner' in undivided profits makes a partner; so that if the person whose status is in question has the right to an account as partner and a lien on the assets in preference to individual creditors of his associate, he is a partner. But this, again, seems to be a *petitio principii.* Sometimes it is said that to make a partnership there must be a 'community of interest,' such as will empower each party to make contracts, manage the business and dispose of the property. It will not be disputed that in such case there is a partnership if in addition there is a sharing both of profits and losses. Some courts hold that there is no partnership unless there is a community both of property and profits, while others hold that a community of profits alone may, in some circumstances, be enough.

"Of course, as between the parties, there must be an intention to form a partnership, since this contract, like every other, must be founded upon consent. It is sometimes said that intention may be unimportant where third parties are concerned; but this, it seems to me, is not partnership, but estoppel. Certainly, where there is no partnrship *inter se* (as there cannot be without intention), a creditor, who has not been misled by any speech or act amounting to a holding out, could not hold one person responsible, as partner, for the debt of another. This is not to say that a partnership may not be formed by persons who are unconscious that they are doing so. It is not the name that is given that controls; it is 'the purpose disclosed by the entire transaction.' Stewart v. Stovall, 191 Ky. 508, 230 S. W. 929.

"And it was further said in that case: 'By the intention is meant the legal intention deducible from the language of the contract and the acts of the parties; and, if they intend to do things which in law constitute a partnership, they are partners, whether their purpose was to create or avoid that relation.'

"The gist of the more recent cases seems to be that a partnership cannot, in fact, exist even as to third persons unless one was intended or the parties to the arrangement by their words or conduct have misled third persons to their detriment and are estopped to deny that they are members of a partnership. It was Judge Cooley who said: 'We also think there can be no such thing as a partnership as to third persons, when as between the parties there is no partnership, and the third persons have not been misled by the concealment of facts or by deceptive appearances.' "

In Boreing v. Wilson, 128 Ky. 570, we said:

"It is true that profit-sharing is not a conclusive test of partnership. It is still, however, an important consideration as an item of evidence tending to prove a partnership; for an agreement to share profits is an essential element of every true partnership, and, though its presence is not conclusive that a partnership exists, its absence is conclusive that a partnership does not exist. The reason that profit-sharing is not conclusive is that parties to a contract may frequently agree that the compensation of one

of them shall be equal in amount to a certain proportion of the profits. In such a case no partnership exists. Thus it will be seen that it is not the mere fact of profit-sharing that controls, but the manner in which the profits are shared. Likewise mutual agency has been abandoned as a conclusive test of partnership; the great weight of authority being to the effect that agency as a test of partnership was unfortunate and inconclusive, inasmuch as agency results from partnership and not partnership from agency. Persons who are mutual agents in the conduct of a business and share the profits as partners are undoubtedly partners, and liable as such, and liability as a partner undoubtedly rests upon the principles of agency, and one is not a partner unless he shares the profits as a principal. But mutual agency is not a test of partnership, because the existence of such a relation is the very question in issue. The absence of power and authority on the part of one to bind his associates by his acts in the conduct of the business, that is, the absence of mutual agency, has been deemed to be conclusive that such person is not a partner. But this is incorrect. Although the absence of such power is a circumstance to be considered, it is not conclusive, for as between themselves the power of any partner to bind the firm may be limited to any desired extent.''

In Roberts v. Adams & Sons, 33 Ky. Law Rep. 207, 101 S. W. 314, we said:

"One may loan money to another to be embarked in the latter's business, taking a share of profits in lieu of interest, without becoming a partner. It is often difficult to determine whether such an arrangement constitutes a partnership or a loan. It must be determined upon a careful study of the agreement and of the circumstances showing whether the silent or secret member was intended to be given an interest in the business itself.''

In summoning up his conclusions the chancellor gave the following as his reason for holding that there was no partnership between appellee, McGowan and Kreiger:

"(a) An unequal sharing of profits, since Kreiger was to get $6,000.00 of 'profits on hauling' before McGowan received any profits of all;

"(b)   No sharing of losses since McGowan was to receive the money advanced by him, first of all;

"(c)   No mutual agency;

"(d)   No community of property;

"(e)   No 'community of power in administration.'

"McGowan had no control over the conduct of the business, which was left entirely in Kreiger's hands. McGowan's disbursement of the money supplied by him as needed for the payment of bills cannot be regarded as giving him any substantial control over the conduct of Kreiger's business, except that he doubtless could have brought it to a standstill by refusing to furnish the money he had contracted to furnish. 'All *indicia* of partnership are absent, save only a sharing (an uneven sharing) of net profits.' The omission of McGowan to take notes from Kreiger seems to me not significant."

Accepting the findings of fact of the chancellor as true, and they are supported by the evidence, we are inclined to accept his conclusions of law. In its last analysis a partnership is the result of intention on the part of the parties, and unless such intention exists no partnership contract can arise, although the conduct of persons who are not in fact partners sometimes estops them to deny the existence of the relation because they have held themselves out as partners or have allowed themselves to be so held out and have thus misled and deceived third persons and caused them to enter into contracts or other relations which would work to their detriment if the parties misleading them were permitted to say that no partnership existed. This, of course, is not contract but estoppel. The facts of this case seem to warrant the conclusion that Kreiger had more contracts than he could finance and was greatly in need of money with which to carry on his business, and in order to get it from appellee, McGowan, agreed in writing that he would give appellee a certain part of the net profits of a named road project for the use of $15,000.00 with which to carry on the work, and McGowan regarding the prospects of profits upon the work as better than the usual rate of interest, consented to furnish the money on condition he be given a part of the net profits. This, of course, was nothing more than a loaning of the money for the return of one-half of the profits in the business

and did not amount to a partnership, especially when it is considered that McGowan was not to suffer any part of the losses of the business, if any there were, nor to have any part in the management and control of the business. Indeed, it would seem that McGowan's only connection with the affair was the loaning of the $15,-000.00 for which he was to receive one-half of the profits of the business after certain things were done. Without an intention to form a partnership on the part of Kreiger and McGowan the terms of the writing did not raise such a relation between them, and we are persuaded that the learned chancellor arrived at the proper conclusion in holding that McGowan was not a partner of Kreiger and that the creditors of Kreiger could not look to McGowan for the payment of their debts.

Judgment affirmed.